WM. A. BROWN and O. B. SCHOOLFIELD v. H. M. WILSON.

Western Section. February 13, 1931.

Petition for Certiorari denied by Supreme Court, June 10, 1931.

J. P. Chase, of Memphis, for plaintiff in error.
A. B. Case, of Memphis, for defendant in error.

HEISKELL, J.   Plaintiff, H. M. Wilson, sued the defendants, Brown and Schoolfield and also D. H. Potts in the Circuit Court of Shelby County, Tennessee, for four hundred eighty-six dollars ($486),

which Wilson claimed was due him for the painting of a house on Lewis Street in Memphis.

The declaration is in two counts. The first count alleges that the plaintiffs contracted with the defendant Potts, to perform certain work on a house located at 236 Lewis Street, Memphis, and that the defendant Potts was the agent of the plaintiffs in error, Brown and Schoolfield, who were undisclosed principals of the agent Potts. The second count of the declaration alleges that the plaintiff Wilson, contracted with the defendant Potts to perform certain work on a house at 236 Lewis Street, Memphis, for the sum of four hundred eighty-six dollars ($486), and that after completing the work the "plaintiff after much investigation learned the the defendants were jointly interested in the sale of said property, and that they had entered into a written contract for the sale of said property and were to share in stipulated amounts in the proceeds of said sale of said property." It is then alleged in the second count of the declaration that the defendant Potts and the defendants 'Brown and Schoolfield were partners.

The plaintiffs in error, Brown and Schoolfield, filed pleas of not guilty, nil debet, non assumpsit, accord and satisfaction, a further plea denying agency and a further plea denying partnership.

The defendant Potts who was sued in the same action with the defendants in error, Brown and Schoolfield, failed to plead to the declaration and in the March, 1929, term of court the plaintiff took a judgment by default against the defendant Potts for his failure to plead.

A jury was demanded by the defendant in error and the case was tried at the March, 1930, term of the Circuit Court in Division Four.

Judge Laughlin, the Judge of that court was ill and Honorable C. S. Seay was elected Special Judge to try this case.

A trial before Judge Seay resulted in a verdict in favor of the defendant in error, H. W. Wilson, against all three defendants for the sum sued for, four hundred eighty-six dollars ($486).

The plaintiffs in error, Brown and Schoolfield, made a motion for a new trial which was overruled and then filed a motion for a verdict non obstante veredicto, and then a motion in arrest of judgment.

All these motions being overruled, defendants appealed and have assigned errors.

The assignments of error are too voluminous to set out verbatim. We will endeavor to state the questions raised, quoting such assignments as we think necessary. The first assignment is:

"The Court erred in failing to make the plaintiff elect upon which count of his declaration he desired to submit the case to the jury.

"The two theories in the declaration are utterly inconsistent. The first count alleges agency and the second count alleges partnership. Obviously the facts could not support both counts of the declaration."

Defendants did not move the court to require plaintiff to elect upon which theory of his declaration he would proceed until after all the proof had been taken and defendants' motion for a directed verdict had been argued and overruled. This motion came too late. Anderson v. Read, 2 Overton, 205; Babson v. Tinsley, 4 Higgins, 607.

But passing this, the defendants admit that plaintiff did the work painting the house. They admit that the amount claimed was due him and that he had a right to fix a lien on the property in which they were all interested. When Wils Davis as attorney for plaintiff threatened to fix a lien on the building, Brown told him that was not necessary, that he would convey the property to Wilson if he would assume the encumbrances. This is defendants' proof and they claim that Wilson agreed to this and that this was an accord and satisfaction. We will take that up later. This was an admission that the amount claimed was due Wilson and an offer to give him the property if he would not prosecute his lien.

There is in the proof no denial of the agency of Potts or his right to employ Wilson, nor any denial that for any reason the amount claimed by Wilson was not due him. After the jury has found that defendants owe the amount to plaintiff, the case will not be reversed because the court did not require the plaintiff after the proof was all in, to elect to proceed on the theory of the agency of Potts or the partnership of the defendants. There was unquestionably a joint interest in the property, and the only reason given for not paying the plaintiff was the inability to raise the money on the property. The defendants had so handled the property as to make it difficult to determine upon just what theory the suit should be prosecuted.

It is clear that the defendants having a joint interest in the property thought that the painting of the house would help to sell it and they hoped it would bring something over and above encumbrances. No one seems to have considered denying the justness of Wilson's claim.

As to the accord and satisfaction. Counsel for defendants say:

"The court erred in failing to direct the verdict for the defendants, Brown and Schoolfield, for the reason that the proof of an accord and satisfaction plead by the defendant, Brown, was absolutely uncontradicted and there was no issue of fact on this plea."

We do not so read the record. On July 17, 1928, Wm. A. Brown writes to Wils Davis, attorney for Wilson, as follows:

"Referring to our conversation in your office several days ago regarding the property at 236 Lewis Street, which I contracted to sell to Mr. D. H. Potts over two months ago and which contract to purchase he has failed to carry out and on which property Mr. Wilson did a considerable amount of work for Mr. Potts and I understand Mr. Wilson has never been paid for same and has turned same over to you for collection, I have one or two prospects to purchase the house and ·in the event I am successful in negotiating a sale of the house, I will hold out the $486 due Mr. Wilson, provided the property brings enough over and above the first and second mortgages and delinquent taxes on same, or if Mr. Wilson wants the property, I will give him a warranty deed if he will assume the balance due on the first and second mortgages, amounting to approximately $6300. However, this will have to be accepted by Mr. Wilson immediately."

The property in question as shown by the contract between the defendants made Exhibit "A" to Wilson's testimony, fronted seventy (70) feet on the east side of Lewis Street. Wilson says he agreed to accept the property in satisfaction of his claim, but that when he went to get the deed from Brown, that Brown refused to convey more than sixty (60) feet unless he would pay $200. Brown said he had contracted to let some one else have the 10 feet, therefore could not let Wilson have it unless he paid $200 extra for it. Afterwards Brown sent to Wils Davis a deed conveying 60 feet to Wilson. Wilson says he never agreed to accept it nor did he authorize Davis to do so and Davis says he did not accept it for Wilson. Wilson's testimony is clear to the effect that he did not agree to accept less than the whole property and there is no proof offered by defendants to the contrary except this. Brown says that Wilson came to him and said he though Mrs. Irene Edwards would buy the property and that a contract to sell the property described as 60 feet front to Mrs. Edwards was drawn up and signed by Wilson, but a sale was not effected.

Pauline Miles, then a stenographer in the office of Halliburton & Brown says that she drew up the contract of sale to Mrs. Irene Edwards and saw Wilson sign it and that Brown afterwards cut off Wilson's signature. This contract in duplicate is made exhibit to Brown's testimony. It contains no signature, that part of the papers being cut off. Wilson swears he did not sign the contract. It cannot be said that there is no evidence to warrant the jury in finding that he did not sign this contract. Besides if he did sign this contract, the jury could still have found there was no accord and satis-

faction. The jury could have found from the evidence that Wilson had refused to accept the deed for 60 feet and that Wils Davis had not accepted it for him; that Davis had afterwards returned the deed to Brown, and the matter being in this state, Wilson concluded if 60 feet could be sold to any one for enough to pay his debt in addition to encumbrances, that then he could afford to accept the deed which he was otherwise unwilling to accept, or he could let Brown make the deed.

To say the least, there is evidence to support the finding that no accord and satisfaction was agreed upon.

Then it is contended that because Wilson took a judgment by default against Potts that this was an election to hold Potts and release the other defendants Brown and Schoolfield, and that he was precluded from afterwards taking judgment against them. Counsel for defendants insist that Phillips v. Rooker, 134 Tenn., 457, 184 S. W. 12, is directly in point. In order to distinguish that case from the present, it is necessary to go no further than to point out that a final decree was taken against Brown & Carpenter and a certain question reserved and case continued until the next term. It was held that by taking a decree against Brown & Carpenter, complainant had elected to release the other defendant. If only a pro confesso had been taken against Brown & Carpenter and the case set for hearing ex parte as to them and then the case had come on to be heard as to all the defendants, there would have been no election and no release. The judgment by default in this case against Potts for a failure to plead was just like a pro confesso, merely a step required in getting the case ready to be heard and it came on for trial as to all the defendants on issues joined as to those who appeared and plead, and on the judgment by default as to Potts who did not appear. The case was tried by court and jury as to the three defendants at the same time and there was a verdict against all three, Potts, Brown and Schoolfield at the same time, and this was the first and only time a judgment was taken against Potts. There was no error in the holding of the lower court that taking judgment by default against Potts did not release the other defendants.

The fifth assignment is:

"The court erred in failing to direct a verdict for the defendant Schoolfield for the proof did not connect him in any way as principal or partner with the transaction."

Under the contract between Brown, Schoolfield and Potts, the latter was to have the house repaired at a cost not to exceed $500, then sell the property, pay all encumbrances; pay the cost of repairs and divide the balance equally between himself and Brown and Schoolfield. That is, Potts taking 50% and giving the others 50%. This was the way the property was held at the time Wilson did the

repairs. In a sense Potts was the agent for the others to have the repair work done and in a sense all three were jointly interested in the property. The court will not reverse the case on the ground of this assignment.

While other assignments and contentions may be found in the brief for defendants, we think they are answered by the view we take of the case as set out herein. There are some objections to admission of testimony, but we think they are immaterial. There are some objections to the charge of the court and we think they are not well taken.

All assignments of error are overruled and the judgment of the lower court is affirmed.

Owen and Senter, JJ., concur.